UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CRMC Bethlehem, LLC and
CommonWealth Bethlehem
Energy, LLC

      v.                                    Civil No. 1:09-cv-344-JL
                                         Opinion No. 2010 DNH 129

North Country Environmental
Services, Inc.

## MEMORANDUM ORDER

This case involves the scope of certain rights granted under a contract between a landfill operator and an energy company planning to develop a facility to produce electricity from gas generated by landfill waste.  Plaintiff, CRMC Bethlehem (CRMCB)[1] entered into a Gas Lease and Easement Agreement ("Gas Lease") with defendant, North Country Environmental Services (NCES), granting CRMCB the right to extract gas from NCES's landfill in Bethlehem, New Hampshire.  The lease contains a provision granting NCES certain rights to review and approve CRMCB's proposals for a landfill gas energy recovery facility.

---

[1]CRMCB is a wholly-owned subsidiary of CommonWealth Resource Management Company (CRMC).  Plaintiff CommonWealth Bethlehem Energy (CBE) is a limited liability company wholly-owned by CRMC. It is not a party to the Gas Lease, but has subleased certain rights under the Gas Lease.

Between September 2008 and May 2009, CRMCB made a series of proposals to develop an energy recovery facility at the landfill which were rejected by NCES.  Unable to agree on a plan suitable to all, the plaintiffs filed suit seeking:  (1) a declaratory judgment that either CRMCB does not require NCES's approval for an energy recovery facility project located entirely within an area designated as a Landfill Gas Utilization Area ("LGUA") or that withholding approval was unlawful (Count 1); (2) a declaratory judgment that NCES does not have the authority to reject placement of the energy recovery facility on land adjacent to the landfill owned by the Tucker family (the "Tucker Project") and if it does, NCES may not withhold such approval (Count 2); (3) a declaratory judgment that it is not required to make certain "Sublessee Payments" due NCES under the Gas Lease if it decides to construct the Tucker Project (Count 3); (4) injunctive relief (Count 4); (5) damages for breach of contract (Count 5); (6) damages for breach of the implied covenant of good faith and fair dealing (Count 6); (7) damages under a third party beneficiary claim by CBE (Count 7); and (8) damages pursuant to a state Consumer Protection Act claim, see N.H. Rev. Stat. Ann. 358-A, (Count 8).  CRMCB now moves for partial summary judgment, requesting a determination of liability together with injunctive and declaratory relief.  The court denies the plaintiffs' motion

2

because it cannot conclude that the contract terms at issue are unambiguous and that the plaintiffs are entitled to judgment as a matter of law.  See Fed. R. Civ. Pro. 56(c)(2); Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp., 817 F. Supp. 235, 243 (D.N.H. 1993); see generally, Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).  Further, significant issues of material fact regarding the parties intent remain in dispute, rendering summary judgment in favor of the plaintiffs inappropriate at this time.

First, the court denies the plaintiffs' motion for summary judgment on Counts 1, 5, 6, and 7.  The plaintiffs advance several arguments based on the meaning and scope of the approval rights under Section 3.1(b) of the amended Gas Lease and Easement Agreement.  "[T]he general rule is that whether the contract is clear or ambiguous is a question of law.  If the contract is deemed to be ambiguous, then the intention of the parties is a question of fact."  Colonial Life Ins. Co. of Am., 817 F. Supp. at 243 (quotations and ellipses omitted); cf. Daniel v. Hawkeye Funding, Ltd. P'ship, 150 N.H. 581, 582-83 (2004).  Terms are ambiguous "where the contracting parties reasonably differ as to [a contract's] meaning," In re Navigation Tech. Corp., 880 F.2d 1491, 1495 (1st Cir. 1989); N.A.P.P. Realty Trust v. CC Enterprises, 147 N.H. 137, 139 (N.H. 2001), or where the scope of

the contract's terms are subject to reasonable interpretation.
Cf. N.A.P.P. Realty Trust 147 N.H. at 139.  If the court
determines that the contract terms are ambiguous, then such
"ambiguity presents a genuine issue as to a material fact, which
precludes summary judgment . . . ."  Colonial Life Ins. Co. of
Am., 817 F. Supp. at 244.

Neither the meaning nor the scope of the approval rights set
forth in Section 3.1(b) is easily discerned from the plain
language of the Gas Lease.  Each party posits reasonable
interpretations of Section 3.1(b) based not only on specific
contract terms, but also in light of each party's valid business
considerations,[2] and the language of the provision is not

_____

[2]In support of its narrow reading of Section 3.1(b), CRMCB
contends that it would not have executed the Gas Lease if that
section gave NCES broad approval rights.  It is a well
established principle of contract law that parties are "presumed
to be capable of managing [their] own affairs, and the question
whether [their] bargains are . . . economically efficient or
disastrous, is not ordinarily a legitimate subject of judicial
inquiry."  11 Richard A. Lord, Williston on Contracts § 31:5 (4th
ed. 2010).  The fact that a broad interpretation may not be in
CRMCB's optimal business interest does not favor its
interpretation of the Gas Lease, nor renders the terms of the
lease unambiguously favorable to CRMCB.  Cf. id.; Olbres v.
Hampton Co-op. Bank, 142 N.H. 227, 233 (1997) ("[C]ourts cannot
make better agreements than the parties themselves have entered
into or rewrite contracts merely because they might operate
harshly or inequitably" (quotations omitted)).  Further, NCES
proffers an equally plausible business reason for a broad
interpretation of Section 3.1(b), namely that because it is
primarily engaged in the trash disposal business, it wanted to
ensure that the conversion of landfill gas (a byproduct of the
landfill), would not interfere with their primary operation.

sufficiently clear or unambiguous to resolve their differences. Given this ambiguity, summary judgment in favor of the plaintiffs on issues concerning the scope of Section 3.1(b) is precluded. See id.

The plaintiffs' further argument that they are entitled to summary judgment on Count 1 because "NCES has already approved the development of the [energy recovery facility] in the LGUA" when it established the LGUA as part of an amendment to the Gas Lease likewise fails. Significant issues of fact remain in dispute regarding the intent of the parties when they established the LGUA, and whether verbal approvals were given by NCES employees to use the LGUA for the energy recovery facility. Further, it is unclear from the terms of the amended Gas Lease that placement of an energy recovery facility in the LGUA is subject to the approval provision of Section 3.1(b) and if so, the extent of NCES's approval power. Each of these issues are disputed and material, precluding summary judgment.

Summary judgment on Count 2 is similarly denied because the court cannot conclude, as a matter of law, that Section 3.1(b) of the Gas Lease does not require CRMCB to obtain approval from NCES in order to construct the Tucker Project. The plaintiffs contend that because the project does not involve placement of an energy recovery facility in the landfill or landfill gas permit

5

applications, and the 125 feet of trench across the landfill for a buried gas pipeline and other energy and utility conduits is not part of any landfill gas management system, approval is not required.  Section 3.1(b) requires that "[t]he [energy recovery facility's]'s design and plan of incorporation into the landfill . . . shall be subject to prior review and written approval."  It remains unclear whether the piping connecting the source of landfill gas with the energy recovery facility on the Tucker Property constitutes a "plan of incorporation" of the energy recovery facility "into the landfill."  Put another way, the scope of Section 3.1(b) as it pertains to the Tucker Project is sufficiently ambiguous to preclude summary judgment in favor of the plaintiffs.  See Colonial Life Ins. Co. of Am., 817 F. Supp. at 244.

The plaintiffs' motion for summary judgment on Count 3 is denied.  The plaintiffs request that the court declare that CRMCB is not liable for "Sublessee Payments" under Sections 6.1 and 11.3 of the Gas Lease if an energy recovery facility were developed on the Tucker Property by CRMCB's wholly owned subsidiary, Muchmore Energy, LLC.  Although Sections 6.1 and 11.3 read in their entirety may not require CRMCB to make Sublessee Payments if the Tucker Project becomes operational, it is difficult to conclude, as a matter of law, that those contract

6

terms are sufficiently clear to permit the plaintiffs to prevail on summary judgment.

What the present record reveals is not a definitive "agreement" or specific operational plan between Muchmore and CRMCB, but rather a paragraph summary of what the project might look like.  And CRMCB concedes that significant regulatory and legal obstacles may impact the plan's development.  The plaintiffs have therefore not shown that Counts 2 and 3 are ripe for consideration, further rendering summary judgment inappropriate on those claims.  See Santoni, 369 F.3d at 598; Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823, 836 (D.R.I. 2004) (a claim is not ripe for consideration where it "involves uncertain and contingent events that may not occur as anticipated or may not occur at all") (quotations omitted).

In sum, because the contract terms are ambiguous, there is significant uncertainty regarding material facts, and the issue may arguably not be ripe for consideration, the plaintiffs' motion for summary judgment on Count 3 is denied.[3]

Finally, the plaintiffs' request for summary judgment on their state Consumer Protection Act claim, see N.H. Rev. Stat.

---

[3]Because the court denies the plaintiffs' request for summary judgment on Counts 1 through 3, their request for injunctive relief (Count 4) is denied.

7

Ann. § 358-A, is denied.  The New Hampshire Supreme Court has recognized that although "the general provision of [N.H. Rev. Stat. Ann. § 358-A:2] is broadly worded, . . . not all conduct in the course of trade or commerce falls within its scope." ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007).  As such, "[a]n ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act."  Barrows v. Boles, 141 N.H. 382, 390 (1996); see State v. Moran, 151 N.H. 450, 453 (2004).  "Whether a party has committed an unfair or deceptive act, within the meaning of the consumer protection act, is a *question of fact*."  Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993) (quotations and brackets omitted).  The parties vehemently dispute, in conflicting affidavits, whether NCES's refusal to approve CRMCB's expansion plans result from a genuine concern about the impact on landfill operations or that concern is mere pretext.  It would be inappropriate, therefore, to grant summary judgment where there exists, at the most basic level, a genuine issue of material fact, namely, whether NCES acted in a deceptive or unfair manner.  See, e.g., Curtis Mfg. Co., Inc. v. Plasti-Clip Corp., 888 F. Supp. 1212, 1228 (D.N.H. 1994); cf. Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001).

8

**CONCLUSION**

The plaintiffs' motion for partial summary judgment[4] is therefore denied in its entirety.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 29, 2010

cc:  Andrew W. Serell, Esq.
     Curtis A. Connors, Esq.
     Edward C. Cooley, Esq.
     James F. Norton, Esq.

_____

[4]Document no. 11.

9